FILED'05 DEC 14 16:22USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL R. MORRISETTE,     CV. 04-1785 JE

Plaintiff,     FINDINGS AND RECOMMENDATION

v.

JOANNE B. BARNHART
Commissioner of Social Security,

Defendant.

JELDERKS, Magistrate Judge:

## INTRODUCTION

Plaintiff Michael Morrisette brings this action pursuant to the Social Security Act, 42 USC § 405(g)("the Act"), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner should be reversed and remanded for further administrative proceedings.

///

## PROCEDURAL BACKGROUND

Morrisette filed an application for benefits on June 10, 2002, alleging disability since December 31, 1999, due to degenerative lower spine issues, carpal tunnel syndrome, mental illness, obsessive compulsive disorder, and depression . His application was denied initially and upon reconsideration. On September 3, 2003, a hearing was held before an Administrative Law Judge (ALJ). In a decision dated January 22, 2004, the ALJ found Morrisette not disabled and therefore not entitled to benefits. On November 8, 2004, the Appeals Council denied Morrisette's request for review, making the ALJ's decision the final decision of the Commissioner. Morrisette now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53

F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## ALJ's DECISION

At step one, the ALJ found Morrisette had not engaged in substantial gainful activity since the alleged onset of his disability on December 31, 1999.

At step two, the ALJ found Morrisette had the medically determinable severe impairments of degenerative disc disease, depression, and an obsessive compulsive disorder ("OCD"). This finding is in dispute.

At step three, the ALJ found that Morrisette's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Morrisette was not fully credible and retained the residual functional capacity to perform a limited range of light exertion work in which he is not required to have frequent public interaction. This finding is in dispute. The ALJ determined that Morrisette was unable to perform his past relevant work.

At step five, the ALJ found that Morrisette could perform work existing in the national economy, specifically small products assembler, packaging line worker, and gate guard/security guard. This finding is in dispute.

## DISCUSSION

Morrisette was 48 years old at the time of the ALJ's decision. He has completed high school and one year of college. The medical records accurately set forth Morrisette's medical history as it relates to his claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details will not be recounted here.

Morrisette contends that the ALJ erred by: (1) failing to find carpal tunnel syndrome a severe impairment; (2) finding Morrisette not entirely credible; (3) rejecting the opinions of his treating physicians; (4) failing properly to develop the record; (5) and improperly determining his RFC.

///

I. Step Two Analysis

Morrisette contends that the ALJ erred by failing to assess carpal tunnel syndrome as a "severe" impairment at step two of the sequential evaluation. Morrisette's argument fails because the ALJ did not deny his claim at step two. The ALJ can deny a claim at step two only if the evidence shows that the individual has no impairments causing more than a minimal effect on the ability to work. SSR 85-28. Here, the ALJ found that Morrisette did have medically severe impairments and properly continued the sequential evaluation until he reached a conclusion at step five. SSR 96-3p.

Morrisette failed to show that carpal tunnel syndrome had functionally limiting effects during the relevant time period, that is, between December 31, 1999 and December 31, 2001. To show that an impairment is severe for the purposes of step two, the claimant must show that it significantly limits his ability to perform basic work activities. 20 CFR § 404.1521. These include physical functions, such as walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 CFR § 404.1521(b).

Morrisette testified that his carpal tunnel syndrome symptoms bothered him daily, and that his hands go numb after ten minutes of gripping. Tr. 375. The symptoms affect both hands, but the right is worse than the left. Tr. 377. However, in determining the severity of an impairment at step two, the medical evidence alone is evaluated in order to assess the effect of the impairment on the ability to do basic work activities. SSR 85-28.

As the ALJ noted, nerve conduction studies performed by Robert Neuwirth, M.D., in April 1999 indicated carpal tunnel syndrome on the right, with no evidence of radiculopathy. Dr.

6 - FINDINGS AND RECOMMENDATION

Neuwirth prescribed a wrist splint. Tr. 130. Morrisette testified that he never picked up the splint. Tr. 373. In October 1999 Glenn S. Chapman, M.D., noted that Morrisette complained of bilateral carpal tunnel syndrome, and prescribed B6 vitamins for "a matter of weeks...." Tr. 298. Neither physician assessed any functional limitation arising out of Morrisette's carpal tunnel syndrome.

Because Morrisette has not shown that carpal tunnel syndrome resulted in any functional limitations beyond those imposed by the severe impairments identified by the ALJ, the court should sustain the ALJ's findings and conclusion at step two.

II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

7 - FINDINGS AND RECOMMENDATION

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...."
> *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988));
> *Cotton*, 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Morrisette suffers from degenerative disk disease, depression and OCD. These impairments could reasonably be expected to cause some degree of pain and other symptoms. Therefore, the ALJ may not simply reject Morrisette's symptom testimony. *Id*. To determine whether Morrisette's testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen*, 80 F3d at 1284.

The ALJ stated:

> In reaching conclusions about the claimant's "RFC", I have considered the claimant's testimony concerning his subjective complaints and limitations. However, his testimony was not convincing that he was "disabled" prior to his date last insured. The claimant reported that his depression "lifted" after he moved to Oregon in August 2001, al-

8 - FINDINGS AND RECOMMENDATION

> though he had had some down times. He reported the existence of
> depressive periods that last 2 to 3 days. But again these episodes
> were generally occurring after his date last insured.
>
> The record also fails to establish any disability on or before the
> claimant's date last insured. The claimant was running a private
> corporation with his family in 2001. This activity suggests that
> the claimant was able to function at a higher level that he perhaps
> did not recognize.
>
> As noted earlier in this decision, the medical evidence does not
> provide objective findings to support disability prior to the date
> last insured. Furthermore, the record suggests some inconsisten-
> cies with the allegation of disability. In February 1999, a chart
> note states that the claimant suffered pain because he was lifting
> weights that were too heavy for too long a period of time [citation
> omitted]. In July 1999, Glenn Chapman, M.D., described the
> claimant as "very happy and very muscular" [citation omitted].
>
> In 2003, treating physician Dr. Nilaver reported that the claimant
> "...endorses that he is doing quite well". The doctor described a
> physical status that was rather normal [quotation omitted]. Tr. 23.

Morrisette testified that he and his wife separated in January 2000. Tr. 353. As to his mental state, Morrisette said "I would describe it as poor, depressed. Had a lot of problems with my obsessive compulsive disorder. Mentally, in a fog I would just say not knowing which way to go." Tr. 354. He was treated between 1999 and 2001 by Irving Hoffman, Ph.D., a psychologist, at least once a week and sometimes twice a week. Morrisette testified "I just had no will or desire to get out of bed. I would stay in my room a lot. Get real weepy, very despondent just not knowing what direction to go in." *Id.* He lived on credit cards and the sale of assets, and considered suicide "quite a few times." Tr. 355.

Morrisette moved from Florida to Oregon in August 2001 to live with his parents. He testified that after he moved to Oregon the depression would lift "[f]or a little time and then I just would go into different periods of time where I would be down and out for a couple of days and

9 - FINDINGS AND RECOMMENDATION

stay in my room and try to work through that. And try to do things to get things off–problems off my mind. I would say, on an average, a couple times a month." Tr. 356-57. Morrisette slips into depression a couple of times a month for two or three days and becomes weepy and suicidal. Tr. 358. He has been treated by James Farley, M.D., a psychiatrist, since shortly after arriving in Oregon.

The ALJ's conclusion that Morrisette's depression lifted after August 2001 is not supported by the evidence and is not a legitimate reason to find Morrisette not fully credible.

The ALJ asserts that Morrisette's assertion of disability is not credible because he "was running a private corporation with his family in 2001." Tr. 23. However, Morrisette testified that income of $53,000 received in 1999 was the distribution of assets from a closely-held corporation and for which he actually received a boat. The ALJ questioned Morrisette:

Q This is a distribution from the Family Corporation?

A Yeah, what they did is they decided not to do the project. They let it just go for like six months. I didn't know what was going to happen.

Q You were acting as the consultant running around—

A Yeah, I was just doing management type stuff, you know, making sure guys showed up for work and –

Q How many were in the crew?

A Anywhere between four and six. I had–

Q This must have been a big boat.

A Fifty-seven foot Kriscraft –

Q Wow.

A —yeah, built in 1964.

Q Wow.

A It was a beautiful boat.

Q Yeah

A The $53,000 was a disbursement to my wife and myself so they could eliminate all the assets, the company so— Tr. 351.

There is no evidence to support the ALJ's conclusion that Morrisette was running a family corporation in 2001. Morrisette did do some work for the family corporation in 1999, but this is not a legitimate reason to find Morrisette not credible.

Finally, the ALJ cites a lack of medical evidence of disability and inconsistencies in the medical record to support his credibility finding. Morrisette points to the report of his treating physician, James A. Farley, M.D. On October 2, 2003, Dr. Farley wrote:

> Mr. Morrisette was seen for psychiatric evaluation in this office on November 5th, 2001. The initial impression was Obsessive Compulsive Disorder with a history of depression, either recurrent Major Depression or Dysthemia. There was a remote history of alcohol problems, which were in complete remission. Since that evaluation I have seen Mr. Morrisette on a roughly monthly to every two month basis for depression and anxiety. He has had multiple medication trials and appears to be doing best on a combination of alprazolam and clonazepam as well as Depakote, desipramine and trazedone. He has had profound difficulty with depression and anxiety that have affected his basic functioning at home. I have recently met with the patient and his father because of profound depression. He has improved somewhat since that time. He continues to have problems with anxiety and depression, which influence his basic daily living and interfere with socializing. He certainly has difficulty with pace, concentration and follow through.
>
> He has had marked depression and anxiety problems which have included periods of anhedonia, appetite disturbance, sleep disturb-

11 - FINDINGS AND RECOMMENDATION

> ance, decreased energy, feelings of worthlessness, poor concentration, and brief thoughts of suicide. He has not had actual psychotic problems, but he has had some mood swing problems and marked anxiety and obsessive compulsive symptoms.
>
> Based on this information I certainly see Mr. Morrisette as unemployable due to his mental illness. Tr. 334.

The ALJ's assertion that there was no medical evidence or objective findings supporting disability prior to Morrisette's date last insured is not supported by substantial evidence.

As to the February 1999 chart note regarding excessive weight lifting, Morrisette testified that he used to lift weights, and stopped in 1999. Tr. 386. The chart notes are from "an unknown source," include multiple references to depression, and question whether the patient has "any concerns or expectations about your massage?" Tr. 2, 192. This chart note does not constitute evidence that Morrisette is not credible.

Glenn S. Chapman, M.D., described Morrisette as "very happy and very muscular" in July 1999. Tr. 300. In October 1999 Dr. Chapman describes Morrisette as "suicidal with severe depression." Tr. 299. The July 1999 chart note does not constitute evidence that Morrisette is not credible.

Finally, the ALJ cites Morrisette's report that he was "doing quite well" to Gajanan Nilaver, M.D., as inconsistent with Morrisette's assertion of disability. Tr. 252. Morrisette suffered a seizure in January 2003, and was seen by Dr. Nilaver in April 2003 in follow-up. Dr. Nilaver noted that Dr. Farley was treating Morrisette for depression. In July 2003, Dr. Nilaver wrote "Michael Morrissette [sic] is seen in follow-up to day for issues pertaining to seizures. He has done quite well in this regard, but the depression still appears to be a major issue." Tr. 251.

Morrisette's April 2003 assertion that he was doing "quite well" does not constitute evidence that his assertion of disability was not credible.

The ALJ did not identify what portions of Morrisette's testimony he found not credible, nor did he offer "clear and convincing" reasons why it was not credible. *Reddick*, 157 F3d at 724. Accordingly, the ALJ's determination that Morrisette is not entirely credible is not supported by substantial evidence.

III. Treating Physicians

A. James A. Farley, M.D.

Dr. Farley treated Morrisette for depression and OCD from November 5, 2001 through at least October 2003. As set out above, Dr. Farley opined that Morrisette was "unemployable due to his mental illness," and suffered from anxiety and depression that interfered with socializing and caused difficulties with pace, concentration and follow through. Tr. 334.

The ALJ summarized Dr. Farley's opinion, and concluded that Morrisette's depression and OCD are severe impairments. Tr. 20. The ALJ stated:

> More recently in 2002, the claimant's mental status was described in a Psychiatric Review Technique Form (PRTF) completed by Peter LeBray, Ph.D., in August 2002 and confirmed by Paul Rethinger, Ph.D., in November 2002 [citation omitted]. Both psychologists, although concluding that the claimant evidenced depression/major depressive disorder and obsessive compulsive symptoms, found insufficient evidence to conclude that that [sic] a severe mental impairment existed at any time between the alleged disability onset date and the date last insured. Tr. 20.
>
> ...the evidence has established no restriction of daily activities; moderate difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence and pace....
>
> In reaching these conclusions about the effects of the claimant's mental impairments, I again gave him the benefit of the doubt.

> In an assessment of the claimant's mental impairments during the
> completion of a Psychiatric Review Technique form in August
> 2002, Peter LeBray, Ph.D., stated the evidence was insufficient
> to find any functional limitations. This assessment was confirmed
> by Paul Rethinger, Ph.D., in November 2002 [citation omitted].
> Thus, the severity of the mental impairments are next to impossible
> to discern in the claimant's medical record due to the minimal
> evidence. Tr. 21.

Dr. Farley's opinion letter was written in October 2003, and was therefore not yet in the files reviewed by psychologists LeBray and Rethinger.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.;* § 404.1527(d)(5). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

Here, the ALJ relied on the opinions of the record- reviewing psychologists instead of the contrary opinion of the treating doctor, when the psychologists did not have a chance to consider the treating physician's opinion. The ALJ did not mention Dr. Farley's opinion that Morrisette

14 - FINDINGS AND RECOMMENDATION

was disabled, nor did he credit Dr. Farley's assessment that Morrisette had limitations of pace, persistence and follow through. These opinions are corroborated by Morrisette's testimony. The ALJ's reliance on the reviewing psychologists' opinions is not supported by specific and legitimate reasons and is therefore not supported by substantial evidence.

B. Irv Hoffman, Ph.D.

Irv Hoffman, Ph.D., treated Morrisette from 1999 to 2001 for "severe depression and OCD." Tr. 340. Dr. Hoffman's chart notes were lost when his office relocated. Dr. Hoffman saw Morrisette weekly, and in April 2004 he wrote:

> Over the two-year period I worked with Mr. Morrissette [sic], he struggled with severe depression and OCD. He was extremely depressed, frequently spending days in bed, unable to get up for even seemingly simple tasks. He was having difficulty maintaining attention and concentration and was plagued with short-term memory losses. He frequently misplaced his keys, wallet, and glasses, and spent a great deal of time and energy to find them. At times, Mr. Morrissette [sic] experienced suicidal ideation. During these times, we increased our sessions per week. He was also having ongoing problems with back pain, which contributed to his sense of despair.
>
> Mr. Michael Morrissette [sic] is an intelligent man, however his difficulty with severe depression, isolative behavior, anhedonia, hopelessness, concentration and short term memory problems would have made it impossible for him to have sustained employment during the years of our treatment. Tr. 340.

The ALJ's decision was issued on January 22, 2004. Morrisette submitted the evidence from Dr. Hoffman to the Appeals Council, which considered the new evidence and denied Morrisette's request for review.

This court may consider the new evidence to determine whether the ALJ's decision is supported by substantial evidence and free of legal error. *Ramirez v. Shalala,* 8 F3d 1449, 1451-52 (9th Cir. 1993). Morrisette contends that this court must credit this evidence, the opinion of

15 - FINDINGS AND RECOMMENDATION

Dr. Farley, and Morrisette's symptom testimony, and that crediting the testimony mandates a finding of disability. However, the ALJ did not have the opportunity to consider the opinion of Dr. Hoffman. In addition, the conclusions that Morrisette is disabled are medical rather than legal conclusions, and here there is no testimony from the vocational expert that the limitations found by Dr. Farley and Dr. Hoffman would render Morrisette unable to engage in any work. *Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir. 2000). Accordingly, this matter should be remanded for additional proceedings.

## RECOMMENDATION

For these reasons, the Commissioner's decision should be remanded pursuant to sentence six of 42 USC § 405(g) for further administrative proceedings consistent with these findings.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due December 30, 2005. In no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due with 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dated this 14 day of December, 2005.

JOHN JELDERKS
United States Magistrate Judge